**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ROYAL INSURANCE COMPANY OF** | : | **Case No. 1:04cv2295** |
| **AMERICA, et al.,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **OPINION & ORDER** |
| | : | |
| **THE BOSTON BEER COMPANY, INC.,** | : | |
| **et al.,** | : | |
| **Defendants.** | : | |

This is a declaratory judgment action by Royal Indemnity Company, successor in interest to Royal Insurance Company of America and Foreign Insurance Company ("Royal"), in which Royal seeks a declaration that it owes no duty to defend or indemnify The Boston Beer Company, Inc. and Samuel Adams Brewery Company (collectively, "Boston Beer") in connection with two consolidated class actions against Boston Beer, *Eisenberg, et al. v. Anheuser-Busch, Inc., et al.*, Case No. 1:04cv1081 (N.D. Ohio) and *Tully, et al. v. Anheuser-Busch, Inc., et al.*, Case No. 1:04cv1101 (N.D. Ohio) ("the Underlying Actions"). Royal has filed a Motion for Summary Judgment (Doc. 54), which has been fully briefed and is ripe for consideration. For the reasons articulated below, the Court **DENIES** Royal's motion for summary judgment.

## I.     BACKGROUND

### A.     The Underlying Actions

The Underlying Actions in this case were both filed in the Court of Common Pleas of Cuyahoga County, Ohio, and removed to the United States District Court for the Northern District of Ohio, where they were consolidated before Judge Donald C. Nugent.  On September 15, 2004, a consolidated amended complaint was filed, which is the complaint that this Court reviews to determine whether the class plaintiffs' allegations trigger Royal's alleged duty to defend (hereinafter referred to as "the Underlying Complaint," attached as Ex. H of Royal's Motion).  The Underlying Complaint is a vague and verbose sixty-five page document which states at the outset that "[t]his case arises from a long-running, sophisticated, and deceptive scheme by certain alcoholic beverage manufacturers to market alcoholic beverages to children and minors (persons under the age of twenty-one years).  The primary purpose and effect of this ongoing scheme has been to generate billions of dollars per year in unlawful revenue derived from sales of alcoholic beverages consumed by minors."  (Underlying Complaint, ¶ 1.).[1]

In addition to Boston Beer, the class plaintiffs named as defendants thirty-five domestic and foreign manufacturers and distributors of alcoholic beverages, including Anheuser-Busch, Inc.; Adolph Coors Company, Bacardi USA, Inc.; Heineken, N.V.; Jim Beam Brands Co.; Labatt Brewing

---

[1]  In addition to these class actions in Ohio, five other nearly identical class action complaints were filed in New York, West Virginia, Wisconsin, Florida, and Michigan against manufacturers of alcoholic beverages.  One court has described these complaints as "massive, multifarious, internally inconsistent and flagrant abuses of the mandate for notice pleading," *Massachusetts Bay Ins. Co. v. Boston Beer Co.*, 2006 WL 3721237, at *1 (Mass. Super. Dec. 8, 2006), and another has more generously referred to the "vague nature of the pleadings," *Great Northern Ins. Co. v. Kobrand Corp.*, No. 110446/04 (N.Y. Sup. June 22, 2005) (transcript of oral argument, at p. 13-14).

Co., Ltd.; and Miller Brewing Co.  Against these defendants, the class plaintiffs assert five causes of action: (1) unfair and deceptive practices in violation of Ohio's Consumer Sales Practices Act, O.R.C. § 1345.01, *et seq.* ("OCSPA"); (2) unjust enrichment; (3) negligence; (4) civil conspiracy (as to some of the defendants); and (5) fraudulent concealment (only for purposes of tolling the statute of limitations).

For relief, plaintiffs seek the following: (1) Certification of two classes -

(A) a Guardian Class consisting of all Ohio residents who are or were parents or guardians whose funds were used without their consent to purchase, for persons under the legal drinking age, alcoholic beverages marketed by Defendants during the period 1982 to the present (the "Class Period"), excluding Defendants and their affiliates, officers, directors, and employees;

(B) an Injunctive Class consisting of the parents and guardians of all children currently under the age of 21.

(2) damages for violation of OCSPA; (3) disgorgement of all amounts by which Defendants were unjustly enriched; (4) an injunction to prevent the illegal marketing of alcoholic beverages to underage persons; (5)  all actual damages, plus punitive damages, levied against all Defendants, jointly and severally; and (6) any further relief the Court deems appropriate.  (Underlying Complaint, Prayer For Relief, ¶¶ 1 -6.)

The following excerpts from the Underlying Complaint are representative:

6.  In addition to the human suffering inflicted on society, Defendants have been unjustly enriched through their intentional marketing of alcoholic beverages to underage persons.  Parents and guardians in the State of Ohio and throughout the country, including the Plaintiffs herein, are victimized as billions of dollars in family assets are transferred to Defendants as part of the far-reaching illegal trade in alcoholic beverages.  And minors themselves, cynically manipulated by sophisticated and well-financed advertising and marketing efforts directed at them, provide Defendants with billions of dollars in ill-gotten profits.

92.  Boston Beer willfully, intentionally, recklessly, and negligently engages in

3

extensive unfair and deceptive marketing efforts directed at minors, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals with reference to minors that they do not have.  These unfair and deceptive marketing efforts include: (a) radio advertisements with substantial appeal to minors that are placed on stations and at times that have a disproportionately large underage audience; (b) magazine advertisements with substantial appeal to minors that are placed in magazines that have a disproportionately large underage readership; (c) internet marketing with substantial appeal to minors that is easily accessible by minors and is in fact viewed by a substantial number of minors; and (d) sponsored rock concerts and other events of interest to underage persons.  Boston Beer markets its Samuel Adams Boston Lager with the slogan "always a good decision" in publications with predominant or substantial underage readerships such as Maxim, FHM and Rolling Stone.  Defendant also has tried to reach "a different audience" (i.e., adolescents) through radio promotions, including its "Sex for Sam" contest. Boston Beer's product Twisted Tea Hard Iced Tea has a light lemony-sugar taste, which masks the taste of alcohol, and is designed to appeal to young drinkers unaccustomed to the taste of alcohol . . . Boston Beer and its advertising firm designed the packaging with bright colors so as to "enlarge their customer base to include a younger audience."  Upon information and belief, Boston Beer knows and intends to sell this product predominantly to minors.

123.  The clear, direct, and foreseeable effects of Defendants' conduct as alleged herein include (a) an increase in the illegal sales of Defendants' products to minors; (b) the establishment of brand preferences for alcoholic beverages among consumers who are too young to legally consume those alcoholic beverages; (c) an increase in the quantity of alcoholic beverages consumed by society as a whole; (d) an increase in the revenues and profits of Defendants; (e) an increase in the injuries and illnesses among teenagers; (g) an increase in the injuries among the general population; (h) billions of dollars in economic injuries sustained by Class members through the illegal trade in alcoholic beverages; and (i) billions of dollars in economic losses sustained by society as a whole.

(Underlying Complaint, at ¶¶ 6, 92, 123.)

**B.    The Royal Policies**

Royal issued fifteen liability insurance policies to Boston Beer between April 1, 1991 and

August 1, 2004, the relevant portions of which contain substantially similar terms and provisions.

As a representative example, Royal attached Policy No. A2ST130368 as Exhibit I to its motion for

summary judgment, issued to Boston Beer for the policy period of August 1, 2003 to August 1, 2004

4

(hereinafter referred to as "the Policy").  Both parties cite to this Policy in their briefs, and the Court, therefore, looks to the terms of this Policy to determine whether the allegations in the Underlying Complaint fall within its coverage.  There are two coverage parts of the Policy under which Boston Beer seeks to invoke Royal's duties -- Commercial General Liability ("CGL") and Liquor Liability. The relevant portions of the CGL coverage reads:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

        **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

*        *        *        *

        **b.**      This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

*        *        *        *

(Policy, at 31.)[2]  The relevant portions of the Liquor Liability coverage reads:

1.      **Insuring Agreement**

        **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

(Policy, at 58.)  As used in this section, "injury" is defined as "all damages, including damages

_____

[2]  All page numbers cited to in the Policy refer to the page numbers of Exhibit I attached to Royal's motion, as the actual pages of the Policy itself are not consecutively numbered.

because of 'bodily injury' and 'property damage,' and including damages for care, loss of services or loss of support." (Policy at 62.)  In addition, both coverage parts contain an exclusion for bodily injury or injury that is "expected or intended from the standpoint of the insured." (Policy at 32, 58.)

### C.    Procedural History

Royal filed the present action on November 18, 2004, seeking a declaration that it owes no defense or indemnity obligations to Boston Beer in connection with the underlying Ohio class actions.  On or about January 26, 2005, Royal and Boston Beer executed an Interim Defense Agreement ("IDA"), in which the parties agreed that, "if a court determines that Royal owes no defense obligation to Boston Beer and/or Sam Adams in the underlying actions, Boston Beer and/or Sam Adams shall reimburse Royal for any defense costs incurred by Boston Beer and/or Sam Adams and paid by Royal since [November 18, 2004]."  Thereafter, the parties filed a joint motion to stay this case, which the Court granted on March 22, 2005.  With the exception of a brief period in which the Court lifted the stay to resolve a motion by Boston Beer to enforce the IDA in connection with an action in New York, this case remained stayed until December 31, 2005.

On February 1, 2006, Judge Nugent granted a motion by the defendants in the Underlying Actions, including Boston Beer, to dismiss the Underlying Complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On February 21, 2006, Royal filed the instant motion for summary judgment, seeking a declaration that it owes no duty to defend or indemnify Boston Beer, and that it is entitled to reimbursement for defense costs paid.[3]  The Court now turns to that motion.

---

[3]  Royal contends that, although the underlying actions have been dismissed, Royal's alleged duties to defend and indemnify continue to be ripe for decision by this Court because the class plaintiffs have appealed Judge Nugent's decision.  While the Court agrees that Royal's alleged duty to defend is ripe, this Opinion & Order does not address Royal's duty to indemnify.

## II.    DISCUSSION

### A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and

provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this Court must view the evidence in a light most

favorable to the non-moving party to determine whether a genuine issue of material fact exists.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909

F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome

of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft

of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.

1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving

party is under an affirmative duty to point out specific facts in the record as it has been established

which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D.

Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary

judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt

7

as to material facts. *Id.*

### B.    Law

The parties agree, and the Court is satisfied, that Massachusetts law applies to the coverage

dispute in this case.[4]  Under Massachusetts law, as in most jurisdictions, "the question of the initial

duty of a liability insurer to defend third-party actions against the insured is decided by matching the

third-party complaint with the policy provisions . . ."  *Sterilite Corp. v. Continental Cas. Co.*, 17

Mass. App. Ct. 316, 318 (1984).  The duty to defend arises if, in comparing the policy terms with

the third-party complaint, "the allegations of the complaint are 'reasonably susceptible' of an

interpretation that they state or adumbrate a claim covered by the policy terms . . . Otherwise stated,

the process is one of envisaging what kinds of losses may be proved as lying within the range of the

allegations of the complaint, and then seeing whether any such loss fits the exception of protective

insurance reasonably generated by the terms of the policy."  *Id.*  (quoting *Vappi & Co., Inc. v. Aetna*

*Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965)) (citations omitted); *see also Simplex Techs., Inc. v.*

*Liberty Mut. Ins. Co.*, 429 Mass. 196, 197-98 (1999) (quoting same).  The insured bears the initial

burden of proving that a claim falls within the grant of coverage.  *See Camp Dresser & McKee, Inc.*

*v. Home Ins. Co.*, 30 Mass. App. Ct. 318, 321 (1991).

"It is well settled in [Massachusetts] that a liability insurer owes a broad duty to defend its

insured against any claims that create a <u>potential</u> for liability."  *Simplex*, 429 Mass. at 199 (quoting

---

[4]  Because the Court exercises diversity jurisdiction, it applies the choice of law principles
of the forum state, Ohio, in order to determine which substantive law to apply.  *Mackey v. Judy's*
*Food Inc.*, 867 F.2d 325, 328 (6th Cir. 1989).  Ohio follows the Restatement (Second) of
Conflict of Laws, and, although the parties do not point to a choice of law provision in the
insurance policy, it appears that Section 188 of the Restatement directs the Court to apply
Massachusetts law in this case.

*Doe v. Liberty Mut. Ins. Co.*, 423 Mass. 366, 368 (1996)) (emphasis supplied by *Simplex* court).  The cause of action stated in the complaint need only give rise to a <u>possibility</u> of recovery, "there need not be a <u>probability</u> of recovery." *Id.* (citation omitted) (emphasis added).  Indeed, a duty to defend may arise "even if the claim is baseless." *Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 19 (1st Cir. 1997) (applying Massachusetts law); *see also Sterilite*, 17 Mass. App. Ct. at 324 ("the insurer []  stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof.").  In addition,  "[t]hat some, or even many, of the underlying claims may fall outside the coverage does not excuse  [the insurer] from its duty to defend the[] actions." *Simplex*, 429 Mass. at 199 (quoting *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass. App. Ct. 318, 322 (1991)).

Massachusetts courts have explained that, "when construing the language of an insurance policy, it is appropriate 'to consider [whether] an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Nashua Corp. v. First State Ins. Co.*, 420 Mass. 196, 200 (1995) (quoting *Hazen Paper Co. v. U.S. Fidelity & Guar. Co.*, 407 Mass. 689, 700 (1990).  Further, "an insured is entitled to the most favorable interpretation of the policy language when there is more than one rational interpretation of the policy language, or where the policy language is ambiguous." *Id.*; *see also Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 12 (1989) ("Where the language permits more than one rational interpretation, that most favorable to the insured is to be taken.").

Before proceeding to the merits of the dispute, the Court notes that a Massachusetts state trial court recently addressed a similar action with a nearly identical underlying complaint and an identical insurance policy, and found that a duty to defend existed under both the CGL and Liquor

9

Liability provisions of the policy. *See Massachusetts Bay Ins. Co. v. Boston Beer Co.*, 2006 WL 3721237, at *1 (Mass. Super. Dec. 8, 2006). Because this Court sits in diversity, it must consider the effect of that state trial court decision on its current analysis. Pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), "a federal court deciding a diversity case under state law must apply the law of the state's highest court." *Anderson Dev. Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1131 (6th Cir. 1995). If there is no decision from the state's highest court on point, the federal court must look to "all relevant data" to ascertain state law, which may include state appellate and trial court decisions. *Id.* (quoting *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). Generally, the decision of a state's intermediate appellate court should not be disregarded by a federal court unless it is clear that the state's highest court would decide otherwise. *Id.* As for decisions of a state trial court, "[w]hile not binding precedent, the opinions of judges of the Court of Common Pleas have weight to the extent that their reasoning and conclusions are persuasive." *Wolf v. Gardner*, 386 F.2d 295, 297 (6th Cir. 1967); *see also Sunbeam Corp. v. Civil Service Emp. Co-op. Ass'n*, 187 F.2d 768, 772 (3d Cir. 1951) ("We do not think the federal court must be bound by that which does not bind another Common Pleas court . . ."). In this case, although the Court recognizes that it is not bound by the decision of the Massachusetts Superior Court, it reaches the same ultimate conclusion (although only based on one of the coverage parts at issue) - - that Royal owes Boston Beer a duty to defend in the Underlying Actions.

    **C.    Analysis**

    There are two separate portions of the Policy at issue in this case - - the CGL and Liquor Liability coverage parts. As explained below, the Court finds that the Policy's Liquor Liability coverage obligates Royal to defend Boston Beer, and, therefore, it does not reach the question of

whether the CGL coverage also creates such an obligation.[5]

Under the Policy's Liquor Liability coverage, Royal must pay "sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." The issues as it relates to this section are whether the injury alleged in the Underlying Complaint can be interpreted as being based on the "selling" of alcoholic beverages and whether the class plaintiffs are seek "damages." In addition, Royal contends that an exclusion for "Expected or Intended" injury applies in this case. The parties' arguments on these issues are addressed below.

### 1. "Selling"

In moving for summary judgment, Royal argues that the Underlying Complaint alleges injuries based only on advertising, as distinct from selling, and that there is no duty to defend under the Policy based on those allegations. Royal also contends that the class plaintiffs do not allege that their underage children actually purchased alcohol directly from Boston Beer such that there was "selling" of alcohol, and, indeed, they cannot because Boston Beer is prohibited by Ohio law from retail sales of alcohol (pursuant to O.R.C. § 4301.24, they can sell only to permitted wholesalers or

---

[5] Although the Court does not squarely address the CGL coverage, it notes that it would be disinclined to find that this portion of the Policy covers the allegations in the Underlying Complaint because it appears that the underlying allegations cannot be read to seek damages for "bodily injury," as is required for there to be CGL coverage. Although the Massachusetts Superior Court found coverage under the CGL portion of the Policy as well as the Liquor Liability portion, it seems to this Court that the generalized references to the "hundreds of thousands of deaths, injuries and illnesses" in the Underlying Complaint are merely extraneous background references and cannot be read as forming the basis of any cause of action. The Court need not definitively resolve that question, however, because it finds that Royal has a duty to defend arising from its Liquor Liability coverage.

11

the State of Ohio).  Royal points out that Boston Beer itself made that same argument in its motion to dismiss the underlying actions, and, therefore, should be judicially estopped from taking the opposite position before this Court.  In addition, Royal argues that Liquor Liability coverage occurs in the context of dram shop actions, and that there must be some direct sale of alcohol to trigger this coverage.

In response, although not so delineated, Boston Beer essentially argues that there are three ways in which the Underlying Complaint can be interpreted as seeking relief for injuries arising from Boston Beer's "selling" of alcohol.  First,  Boston Beer contends that the Underlying Complaint expressly alleges that Boston Beer "sells" alcohol.  (Underlying Complaint at ¶ 69 ("Defendants knowingly profit from a billion dollar illegal business of underlying alcohol to underage persons"); at ¶ 113 ("the purpose and effect of Defendants' marketing efforts directed at minors is to: (a) increase Defendants' revenues and profits derived from the underlying of alcoholic beverages . . ."); at ¶ 123 (the effects of Defendants conduct include "an increase in the illegal underlying of Defendants' product to minors . . .")).  Second, Boston Beer argues that, by definition, "marketing" is synonymous with "selling," such that alleged injuries based on "marketing" are the same as alleged injuries based on "selling."  Finally, Boston Beer argues that the alleged injuries are based on sales of alcohol, and that, even if those sales are not directly between Boston Beer and the consumer (which they cannot be under Ohio law), the Policy is not limited only to direct sales.

As an initial matter, it is difficult to agree with Boston Beer's assertion that the Underlying Complaint can be read as expressly alleging that Boston Beer directly "sells" alcoholic beverages to minors, such that the plain language of the complaint triggers Royal's duty to defend. The references to the word "selling" or "sale" in the Underlying Complaint appear to refer to the indirect

benefits Boston Beer reaps from its allegedly unlawful marketing practices.  Those references seem to relate to Boston Beer "profiting" from the "business of selling alcohol" or increasing profits from the sale of alcohol as an effect of their marketing; they do not specifically allege that Boston Beer actually engages in the business of selling alcohol to minors.[6]  Given the vagueness of these Complaint references, it seems that any duty to defend must arise in this case from a more careful reading of that Complaint.

The Underlying Complaint primarily contains allegations that Boston Beer's "marketing" caused the complained of injuries.  The question is whether injuries based on "selling," as that term is used in the Policy, covers claims for injuries alleged to have been caused by "marketing."  In support of their respective positions, each party cites cases from various jurisdictions interpreting the words "marketing," "advertising," and "selling" in various contexts.  Many of the cases involve determinations of whether an allegation falls under an insurance policy's "advertising injury" clause. *See Proof Toy Prods., Inc. v. U.S. Fid. & Guar. Co.*, 891 F.Supp. 1228, 1235 (E.D. Mich. 1995) (finding that "marketing" encompasses advertising activities), *abrogated on other grounds by Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 805 (6th Cir. 1996); *EKCO Group, Inc. v. Travelers Indem. Co. of Illinois*, 273 F.3d 409, 413-14 (1st Cir. 2001) (distinguishing between

---

[6]  Even if the Underlying Complaint did specifically allege that Boston Beer sells directly to consumers, that arguably still would not be sufficient to invoke Royal's duty to defend because such sales are clearly prohibited by Ohio law.  Although the claim might initially appear to create a defense obligation because even a baseless claim may invoke a duty to defend. *Mt. Airy Ins. Co.*, 127 F.3d at 19, "the existence of an undisputed extrinsic fact that takes the action outside the coverage" is a "rare exception[]" to the rule that an insurer's defense obligation is based on the allegations of the third-party complaint. *Farm Family Mut. Ins. Co. v. Whelpley*, 54 Mass. App. Ct. 743, 747 (2002).  In this case, the existence of the Ohio statute that bars direct retail sales might remove these allegations from coverage, if the defense obligations were only based on those allegations.

"producing and selling" goods and "advertising" goods, and finding that an allegation for trade dress infringement based on an allegedly infringing sale does not constitute an "advertising injury") (applying New Hampshire law); *Jerry Madison Enterprises, Inc. v. Grasant Mfg. Co., Inc.*, 1990 WL 13290 at *4-5 (S.D.N.Y. Feb. 14, 1990) (allegations for copyright infringement based on allegedly infringing sale are not allegations for "advertising injuries").  One case cited by Boston Beer involves an interpretation by the United States Supreme Court of the term "marketing" as used in a statute.  *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (finding that the ordinary meaning of "marketing," as used in the 7 U.S.C. § 2541(a)(3) of the Plant Variety Protection Act, can simply be "selling" and does not require extensive promotional or merchandising activities).  Another case cited by Boston Beer involves a court's conclusion that produce that is sold has been "marketed" for purposes of an insurance policy relating to agricultural production.  *Walpole v. Great Am. Ins. Cos.*, 914 F.Supp. 1283, 1289 (D. S.C. 1994) (looking to dictionary definition of "market" as "to buy or sell" and finding that, because tomatoes were sold, they were "marketed.").

As expected, because of the relative novelty of the underlying class plaintiff's legal theories, none of the cases cited is directly on point.  The Court, however, gleans from these cases some basic observations of the interrelation of the terms marketing, selling, and advertising.  Based on the common and ordinary meaning of these terms, as explained in the cases cited above, marketing is a broad term that encompasses both selling and advertising.  Selling and advertising, therefore, can be, but are not necessarily, subparts of marketing.  In other words, selling a product can constitute marketing it, and advertising a product can constitute marketing it, but both are not required for the activity to be considered "marketing."  Although an interesting semantic foray, these principles do not resolve the issue before the Court.  More instructive are the dictionary definitions of "selling"

14

and "marketing."  The verb, "sell," as used in the most typical context of a commercial sale, is defined as "**2 a** (1) **:** to give up (property) to another for money or other valuable consideration." Webster's Third New International Dictionary 2061 (1993).  Interestingly, another definition of the verb "sell" is "**7 a:** to cause or promote the sale of **b:** to make or attempt to make a sale to **c:** to influence or induce to make a purchase." Webster's Third New International Dictionary 2062 (1993) (examples omitted); *see also* Mirriam-Webster Online Dictionary, *www.m-w.com* (same) (2006).[7] Likewise, one definition of the verb "market," as the Supreme Court pointed out in *Asgrow Seed*, *supra*, is simply "**2 :** sell."  Webster's Third New International Dictionary 1383 (1993).

Based on these dictionary definitions, it appears that "selling" is commonly used in the commercial setting *either* in the sense of a direct commercial sale (an exchange of property for money), or in the sense of causing or promoting the sale of something or influencing or inducing a consumer to make a purchase.  The latter, of course, is precisely what the class plaintiffs in the Underlying Actions are alleging - i.e., that Boston Beer promoted the sale of alcoholic beverages and that it was these marketing efforts that induced their children to purchase those beverages.  Nothing in the Policy limits "selling" only to direct commercial sales rather than promotion or inducement of sales. It appears, therefore, that "selling" has more than one rational interpretation in this context of the Policy.  In such a situation, the Court must give it the interpretation most favorable to Boston Beer. *Boston Symphony Orchestra*, 406 Mass. at 12 (1989).  The Court, therefore, concludes that "selling" as used in the Policy includes promoting a sale or inducing a consumer to make a purchase. Because the Underlying Complaint alleges injury based on "marketing," which, in addition to falling

---

[7]  Although this is the seventh definition listed, four of the first six definitions are clearly inapplicable in this context as they involve connotations such as betrayal, sale into slavery, acting without conscience, and cheating or deceiving.

15

under this definition of "selling," can also both encompass and be synonymous with "selling," the Court finds that the Liquor Liability coverage included in the Policy obligates Royal to defend Boston Beer in the Underlying Actions.

Alternatively, the Underlying Complaint can also be read as alleging harm based on the general "selling" of alcohol in the sense of the first definition cited above - the exchange of property for money.  In fact, the Complaint can be read as alleging injury based on two types of "sales" of alcohol:  the sales from Boston Beer to retailers, and the sales by retailers to consumers.  Both of these sales appear to fall within the terms of the Policy.  Although the sales are not directly from Boston Beer to the consumer, the harm alleged to have occurred in the underlying actions is the direct result of "the selling" of alcoholic beverages.  The Policy is written such that there is coverage for injuries based on "<u>the</u> selling" of alcohol, not "the direct selling of alcohol to an end user."  As for the first type of sales (from Boston Beer to retailers), while it is true that, in Ohio, Boston Beer's "selling of alcohol" is to retailers who, in turn, sell to end users, those sales are made with the specific intent that the product ultimately will flow to end users.  Thus, but for the fact that Boston Beer sells alcohol to retailers, there would be no alcohol available to the teens allegedly induced by Boston Beer's marketing.

As for the second type of sale (from retailers to consumers), the Underlying Complaint alleges injury based on the purchase of alcohol by the class plaintiffs' underage children.  For example, the class plaintiffs assert a claim for unjust enrichment based on the conferring of financial benefit from the plaintiffs (via their children) to Boston Beer through the sale and purchase of alcohol.  Indeed, the Guardian Class that  the class plaintiffs sought to certify was defined as parents or guardians "whose funds were used without their consent to <u>purchase</u> . . . alcoholic beverages

16

marketed by Defendants . . .'' (Underlying Complaint, Prayer for Relief, ¶ 1) (emphasis added.)  The harm alleged by plaintiffs, therefore,  resulted from the selling of alcohol, and the unjust enrichment to which they point occurs because funds are paid from retailers to Boston Beer precisely because Boston Beer's marketing efforts create the allegedly improper sales made by those retailers.  If plaintiffs had succeeded in their complaint on a theory that Boston Beer could be liable for such injury based on their marketing efforts, then Boston Beer would, quite literally, have damages imposed on it as a result of the selling of alcohol.

On this point, the Court does not agree with Royal that the Policy applies only to damages flowing from the direct sales of alcohol to a consumer of that alcohol.  Nothing in the Policy expressly so states.  Indeed, as Boston Beer points out, the Liquor Liability policy for which it paid premiums would be effectively worthless in a state like Ohio if it were read to never apply to indirect sales.  Thus, while it may be true that damages from downstream sales, particularly those several steps removed from the supplier, would generally not fall within the bounds of the Liquor Liability coverage, where, as here, the Underlying Complaint alleges harm flowing from marketing practices by the supplier that result in increased sales by the supplier (even if to a middleman) and increased

17

profits <u>to that supplier</u>, the Policy on its face appears to apply.[8]

In the end, the question of whether the law ultimately permits plaintiffs to hold Boston Beer liable for the class plaintiffs' claims is different than the question of whether Royal has a duty to defend against such allegations.  In determining that such a duty exists under the Policy, the Court is guided by three principles of Massachusetts law:  the duty to defend  is a broad one;  there need only be potential, not probability, for liability; and the Court must interpret policy terms in favor of the insured where there are two reasonable interpretations.  Adhering to these principles, the Court must conclude that Royal cannot escape its duty to defend on the basis that the class plaintiffs did not allege injuries based on the "selling" of alcohol.

---

[8]  The Court is also not persuaded by Royal's argument based on the doctrine of judicial estoppel - i.e, because Boston Beer argued in the underlying actions that the class plaintiffs' cannot allege a direct sale of alcohol to either themselves or their children, Boston Beer should be judicially estopped from taking a different position in the present action.  Royal argues that certain arguments made by defendants, including Boston Beer, and findings made by Judge Nugent, should prevent Boston Beer from now arguing that the underlying plaintiffs allege injury based on "selling."  For example, in the defendants' motion to dismiss the Underlying Complaint, the defendants argued that there could be no claim for unjust enrichment because there were no direct purchases between plaintiffs and defendants.  In addition, they argued that there could be no claim for negligence because, absent an allegation that a class member actually purchased and consumed one of the defendants' products, there was no causation.  In granting the motion to dismiss, Judge Nugent found that, because the defendants did not engage in retail sales of alcohol, there were no "consumer transactions" within the meaning of the OCSPA, there was no foreseeability of injury for purposes of the negligence claim, and there was no direct conferring of benefits for purposes of the unjust enrichment claim.  The Court finds that the doctrine of judicial estoppel does not apply in this instance because Boston Beer's positions are not "clearly inconsistent."  *See Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 452-53 (6th Cir. 2005) (explaining that a requirement for judicial estoppel is that "a party's later position must be 'clearly inconsistent' with its earlier position.").  It is one thing to argue that, for purposes of a statutory element requiring a "consumer transaction" there was no direct sale, and another to argue that "marketing" includes "selling" for purposes of an insurance policy.  Indeed, in this case, Boston Beer does not take the position that it actually sells directly to consumers; it argues that the Policy covers both allegations relating to marketing and indirect sales.

18

###### 2. "Damages"

Royal also argues that it does not owe a duty to defend because the Underlying Complaint does not seek "damages" within the meaning of the Policy.  The Policy states that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (Policy, at 58.)    Royal argues that the class plaintiffs only seek disgorgement of profits and injunctive relief, which Royal contends are equitable remedies that do not constitute "damages" for purposes of the Policy.

While it appears that Royal is correct that a complaint for purely injunctive relief typically would not constitute a claim for "damages" under Massachusetts law, *116 Commonwealth Condo. Trust v. Aetna Cas. & Sur. Co.*, 433 Mass. 373, 376-77 (2001) ("This Commonwealth defines 'damages' as 'the word which expresses in dollars and cents the injury sustained by the plaintiff'") (citation omitted), Royal ignores the relief sought in the Underlying Complaint that clearly can be characterized as relief in the form of damages.  For example, class plaintiffs ask the Court in the Underlying Action to find that defendants violated the OCSPA and to "award damages, including reasonable attorney's fees." (Underlying Complaint, Prayer For Relief, ¶ 2.) Among other remedies, the OCSPA permits consumers to recover "damages," a term which the Ohio Supreme Court has construed broadly in the context of that statute as "an inclusive term embracing the full panoply of legally recognized pecuniary relief." *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 180-81 (2006).  In addition, class plaintiffs seek to "[h]old and assess all Defendants jointly and severally for all actual damages sustained by the Plaintiffs and the Classes, plus punitive damages, and reasonable attorneys fees, costs of suit, and interest."  (*Id.* at ¶ 5) (emphasis added.)

19

Because the class plaintiffs seek damages under the OCSPA as well as "all actual damages," the Underlying Complaint cannot be read as narrowly as Royal suggests, even if the Court were to agree with Royal that disgorgement of profits does not constitute "damages." The Court, therefore, finds that the Underlying Complaint seeks injury based on the "selling" of alcohol, and that it seeks "damages" for that injury within the meaning of the Policy. As a result, the Liquor Liability portion of the Policy at issue in this case covers the claims alleged in the Underlying Complaint and, unless an exclusion applies, the underlying claims give rise to a duty to defend. Royal argues that one exclusion, addressed next, removes this claim from coverage.

### 3. "Expected or Intended"

There is, of course, no duty to defend a claim that is specifically excluded from coverage. *Mt. Airy Ins. Co.*, 127 F.3d at 19. Once an insured meets its burden of proving that a claim falls within the grant of coverage, as Boston Beer has done here, the insurer then bears the burden of demonstrating that an exclusion applies. *Id.* (quoting *Great Southwest Fire Ins. Co. v. Hercules Bldg. & Wrecking Co. Inc.*, 35 Mass.App.Ct. 298, 302 (1993)). In determining whether an exclusion applies, this Court is guided by the principle of Massachusetts law that "[e]xclusions from coverage are to be strictly construed." *Vappi & Co., Inc. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965).

Both the CGL and Liquor Liability coverage parts exclude coverage for injury that is "expected or intended from the standpoint of the insured." (Policy at 58.) Royal argues that this exclusion applies because the Underlying Complaint alleges injury based only on intentional and deliberate conduct on the part of Boston Beer and, therefore, it alleges injury that was "expected or intended" by Boston Beer. Although Royal recognizes that the Underlying Complaint includes a cause of action for negligence, it argues that class plaintiffs simply have mischaracterized their

20

claim, and that, in reality, they only allege intentional conduct.  For example, Royal points out that the Underlying Complaint expressly states in the introductory section that  "[t]he scope of this lawsuit is limited to Defendants' deliberate, reckless, and illegal targeting of minors."

The Court is not persuaded by Royal's arguments.  While it is true that the introductory section of the Underlying Complaint describes the allegations as being limited, the complaint also contains a specific cause of action based on negligence and allegations of negligent conduct. (Underlying Complaint at ¶¶ 4, 140-143.)  For example, class plaintiffs allege that "Defendants have breached their duties to the Plaintiffs and Classes by, among other things: (a) unreasonably saturating minors with extensive advertisements for alcoholic beverages; (b) refusing to take reasonable steps to avoid inducing minors to buy their products . . ."  (*Id.* at ¶ 141.)  They also allege alternative theories of liability, asserting that "Boston Beer willfully, intentionally, recklessly, <u>and negligently</u>" engages in deceptive marketing.  (*Id.* at ¶ 92.)  These and other allegations referring to negligence confirm that the plain language of Underlying Complaint indeed asserts a claim based on negligent conduct.  Although there is no dispute that the Underlying Complaint also contains allegations based on intentional conduct, there is nothing to indicate that the class plaintiffs did not mean to plead negligence in the alternative.  The Court, therefore, would have to overlook or disregard the plain language of the Underlying Complaint in order to find that the "Expected or Intended" exclusion of the Policy applies.  Royal does not present a compelling argument to do so, and none of the case law cited by Royal requires that conclusion.

The case on which Royal primarily relies, *Timpson v. Transamerica Ins. Co.*, 41 Mass.App.Ct. 344 (1996), involves a coverage dispute for underlying allegations of sexual harassment and civil rights violations by a female reporter against several professional football

21

players, which allegedly occurred during a locker room interview.  In that case, the court found that the claims for sexual harassment and civil rights violations could not be interpreted to include unintentional or negligent conduct, and as such, were not covered because of the insurance policy's exclusion for intentional conduct.  *Id.* at 351-52.  In finding against the insured, the court noted that "[n]owhere is the word 'negligent' expressly mentioned or reasonably implied by the language of the complaint."  *Id.* at 352.  Unlike the underlying action in *Timpson*, the Underlying Complaint in the present case contains a separate cause of action for negligence and expressly mentions the word "negligence" in several places.  Moreover, the torts alleged in the present case are certainly of a different character than those alleged in *Timpson*, and it is more reasonable to interpret claims for unlawful marketing practices as including unintentional conduct than it is to interpret a claim for sexual harassment as including unintentional conduct.  *Timpson*, therefore, does not compel the conclusion Royal asks this Court to reach.

Royal's other cases do not fare any better.  Although two of the cases Royal cites involve allegations of negligence in the underlying actions (unlike in *Timpson*) that the courts disregarded for purposes of determining coverage, the courts in those cases found that there was no coverage under an "Assault and Battery" exclusion that is not at issue in the present case.  *See Peters v. United Nat'l Ins. Co.*, 53 Mass.App.Ct. 775 (2002);  *United Nat'l Ins. Co. v. Parish*, 48 Mass.App.Ct. 67 (1999).  In *Peters*, for example, the underlying action was a lawsuit against a sports bar by victims of an attack outside of the bar who claimed, in part, that the bar negligently served alcoholic beverages to intoxicated persons and minors.  *Id.* at 775-76.  The relevant insurance policy under which the bar sought coverage specifically excluded claims arising from assault and/or battery.  *Id.* at 778.  The court in that case found that the "Assault and Battery" exclusion negated coverage,

explaining that, "without the underlying assault and battery, there would have been no personal injuries and, therefore, no basis for a suit against the insured for negligence." *Id.* (quoting *Parish*, 48 Mass.App.Ct. at 70). In the present case, there is no "Assault and Battery" exclusion at issue that would negate coverage, and the claims in the Underlying Complaint are not susceptible to being excluded by such a provision. Moreover, the claims based on intentional conduct in the present case do not "arise from" the allegedly negligent conduct as the claims in *Peters* did; the claims for negligence in the present case are independent claims or claims in the alternative. For those reasons, *Peters* and *Parish* are not applicable to the circumstances of this case.

Finally, Royal also relies on a line of cases in which Massachusetts and other jurisdictions have held that, when there are allegations of sexual misconduct involving a minor, the intent to injure is inferred. *See Doe v. Liberty Mut. Ins. Co.*, 423 Mass. 366, 369 (1996) (citing cases from Massachusetts and other jurisdictions). The Supreme Judicial Court of Massachusetts has explained that, "unlike a situation where an intentional act, such as throwing an object, could have the unintentional consequence of harming an individual, in sexual misconduct involving a minor, the conduct alleged is inherently harmful to the child." *Id.* at 369-70. In so explaining, the Supreme Judicial Court of Massachusetts has held that "[i]t is not possible for intentional sexual misconduct also to be negligent." *Id.* at 370. Royal argues that, because Boston Beer's alleged conduct was directed at minors, the rationale used in those cases also applies in this case. Royal, therefore, would have this Court expand the above-stated principle to <u>any</u> action directed at minors, an expansion which this Court would not, and indeed cannot, provide. Not only is there no compelling reason to equate allegedly unlawful marketing strategies to sexual misconduct, this Court cannot expand Massachusetts law without any indication that the Supreme Judicial Court of Massachusetts would

do so.  Because there is no indication that Massachusetts courts would apply this principle to the present case, this Court refuses take that leap.

Accordingly, the Court is not persuaded that it should overlook the plain language of the Underlying Complaint, which asserts a cause of action for negligence, and find that the Policy's "Expected or Intended" exclusion removes the underlying claims from coverage.

### III.    CONCLUSION

For the reasons stated above, Royal's Motion for Summary Judgment is **DENIED**.  Although Royal, not Boston Beer, moved for summary judgment, there are no genuine issues of material fact relating to the coverage dispute in this case, and the Court finds, as a matter of law, that Royal has a duty to defend Boston Beer in the Underlying Actions.  Royal, therefore, is not entitled to reimbursement of defense costs already paid pursuant to the IDA.  This case is, therefore, **DISMISSED.**[9]


        **IT IS SO ORDERED.**

                                **s/Kathleen M. O'Malley**
                                **KATHLEEN McDONALD O'MALLEY**
                                **UNITED STATES DISTRICT JUDGE**

**Dated: April 5, 2007**

---

    [9]  Because the duty to defend is broader than the duty to indemnify, this Opinion & Order does not address Royal's ultimate duty to indemnify.  That duty will be addressed if the decision in the Underlying Action is reversed on appeal and the class plaintiffs are ultimately successful on their claims.  As of now, however, that issue is not ripe for adjudication.

24